# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MIGUEL A. CAMPUSANO-TEJEDA, | : |
| Plaintiff, | : |
| v. | : Civ. No. 20-103-CFC |
| BETH D. SAVITZ, et al., | : |
| Defendants. | : |

Miguel A. Campusano-Tejeda, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

June 8, 2020
Wilmington, Delaware

**CONNOLLY, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Miguel A. Campusano-Tejeda ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3) Plaintiff appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5, 7) The Court proceeds to review and screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

## II. BACKGROUND

The Complaint's allegations revolve around two separate actions. The first concerns Plaintiff's criminal case and alleges that judges, a prosecutor, private attorneys, and police officers made Plaintiff the subject of their practice of abuse of process. (D.I. 3 at 6) The second concerns alleged actions by correctional officers at JTVCC and alleges that JTVCC Defendants harassed and retaliated against him and carried out unequal treatment when he was singled out as a class of one from other inmates over his different haircut. (*Id.*)

The Complaint alleges that on September 17, 2018, Defendants Newark, Delaware police officer Kenneth Odom ("Odom") and Delaware Deputy Attorney General Beth D. Savitz ("Savitz") appeared before Defendant Delaware Superior Court Judge Ferris W. Wharton ("Judge Wharton") and received over a three-month period warrants for GPS and ping surveillance tracking devices. (D.I. 3 at 5) Plaintiff alleges the warrants were "not based upon reasonable belief for 'probable cause' where Defendant Odom stated in his application/affidavit that 'at no time had the target (Plaintiff) participate[d] or [sold] any illegal drugs to him, during his investigation.'" (*Id.*)

1

The Complaint alleges that Odom, Savitz, and Judge Wharton acted in concert and knew that the application and the use of tracking surveillance devices over a continuous period violated the Fourth and Fourteenth Amendments. (*Id.* at 6)

The Complaint alleges that on December 18, 2018, Odom appeared in front of Defendant Delaware Justice of the Peace Court Judge ("JP Judge") and obtained another warrant for Plaintiff's arrest and the search of his home using evidence obtained through the surveillance devices. (*Id.* at 5) The Complaint alleges that the JP Judge acted contrary to the rule of law when the judge issued a warrant to search two of Plaintiff's two vehicles and for his arrest. (*Id.* at 6) The Complaint alleges the warrant "detailed less evidence of 'probable cause' and no evidence of illegal activity from [Plaintiff's] home." (*Id.*)

The Complaint alleges that ten days later, on December 28, 2018, Defendant Maryland State Police Officer Michael Cornbrooks ("Cornbrooks") worked in concert with Defendant Maryland District Court No. 8 Judge ("Maryland Judge"). (*Id.*) The Complaint alleges that Cornbrooks's application/affidavit stated that "he had no personal knowledge of a crime or crimes committed, nor participated in any investigation of Plaintiff." (*Id.*) The Complaint alleges that a warrant for Plaintiff's arrest and for the search of his apartment should not have issued because it "was not based on personal knowledge, or participation." (*Id.* at 6)

On January 7, 2019, attorney Saagar B. Shah ("Shah") was hired to represent Plaintiff at his preliminary hearing. (*Id.* at 5) Plaintiff advised Shah that he "was never Mirandized by the authorities at which [Shah] explained to [Plaintiff] that it wasn't unusual in cases like his and wasn't necessary in order to be prosecuted." (*Id.*) The

2

Complaint alleges that on March 5, 2019, attorney James T. Haley, Jr. ("Haley") (who apparently also represented Plaintiff) conspired with Savitz and advised Plaintiff to enter an "illegal plea" for dealing heroin under 16 Del. C. § 4753(1). (*Id.*) The Complaint states: "Where it is clear by the Statute, it does not define heroin as a chargeable offense, obstructing access to the court for proper due process." (*Id.*) The Complaint alleges that Shah and Haley violated Plaintiff's First Amendment right to access the court and obstructed his ability to adequately access the Court or bring proper claims for relief. (*Id.* at 7) The Complaint also alleges that Shah and Haley obstructed Plaintiff's access to the court and by failing to give him effective assistance of counsel when they allowed his conviction in the face of clear constitutional violations. (*Id.*)

Plaintiff is housed at the JTVCC. The Complaint alleges that on September 5, 2019, Plaintiff overheard Defendants Correctional Officers Corporal Collins ("Collins") and Corporal Estrada ("Estrada") obsessing over a female whom Plaintiff later learned was his fiancé. (*Id.* at 3) Plaintiff was told by another inmate that Estrada and Collins entered Plaintiff's cell and were "salivating over pictures of his fiancé." (*Id.*) A few days later, Estrada asked Plaintiff if he had a problem with him because of the way Plaintiff was looking at Estrada. (*Id.* at 4) On November 13, 2019, Plaintiff spoke to his fiancé who told him that she was singled out when she was denied visitation for violation of a dress code and when an officer questioned where she was from even though she is a naturalized citizen. (*Id.*) Plaintiff wrote to Internal Affairs about his fiancé's treatment. (*Id.*)

Finally, the Complaint alleges that Estrada and Defendants Corporal Mpok ("Mpok") and Correctional Officer Mears ("Mears") constantly harassed Plaintiff about

3

his hairstyle. (*Id.* at 3) Plaintiff acknowledges that while there is a housing policy rule that prohibits mohawk haircuts, inmates wear "elaborate haircut styles," most of which are "fades." (*Id.*) At some point, Mpok stopped Plaintiff, berated him about his haircut, and told him that if he did not get his hair recut, he would receive a write-up. (*Id.* at 4) Mears inserted himself into the conversation and repeated Mpok's comment. (*Id.*) The Complaint alleges that Mears noticed Estrada standing at a distance, watching, and "orchestrating everything." (*Id.*) Plaintiff thought this was unusual because Estrada was not assigned to the building. (*Id.*) Plaintiff's hair was cut the next day. (*Id.*) He alleges this did not stop Defendants from finding ways to harass him, and he requested an Internal Affairs investigation. (*Id.*) Plaintiff also complained to Defendants Lt. Burnman ("Burnman") and Sgt. Squares ("Squares") who indicated they saw no problem with the way Plaintiff described his haircut but that if officers wanted to issue a write-up for the hair style, they would not stop it. (*Id.*) Plaintiff alleges that Burnman and Squares failed to supervise and condoned the behavior of their subordinates.

Plaintiff seeks declaratory relief as well as compensatory and punitive damages. (*Id.* at 7)

## III.   LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013). *See also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental

defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley v. Wetzel*, 957 F.3d at 374 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of any well-pleaded factual allegations and then determine whether those allegations plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. State Actors

Shah and Holey provided Plaintiff legal representation in his criminal case. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). To act under "color of state law" a defendant must be "clothed with the authority of state law." *West*, 487 U.S. at 49.

As attorneys who represented Plaintiff in his criminal case, Shah and Holey are not state actors for purposes of § 1983. *See Polk Cty. v. Dodson,* 454 U.S. 312, 325 (1981) (holding that public defenders do not act under color of state law); *Steward v. Meeker,* 459 F.2d 669 (3d Cir. 1972) (finding that privately-retained counsel does not act under color of state law when representing client); *Thomas v. Howard,* 455 F.2d 228 (3d Cir. 1972) (holding that a court-appointed pool attorney does not act under color of state law). There are no allegations that Shah and Holey acted under color of law or that they are "clothed with the authority of state law." *See Reichley v. Pennsylvania Dep't of Agric.,* 427 F.3d 236, 244-45 (3d Cir. 2005); *Biener v. Calio*, 361 F.3d 206, 216-17 (3d. Cir. 2004).

Accordingly, the claims against Shah and Holey have no arguable basis in law or in fact and will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915(A)(b)(1).

B.  **Judicial Immunity**

Plaintiff has sued Judge Wharton, a JP Judge, and a Maryland Judge, all of whom, it is alleged, issued warrants either for Plaintiff's arrest or to search Plaintiff's homes or vehicles. "A judicial officer in the performance of his duties has absolute immunity from suit and will not be liable for his judicial acts." *Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 184 (3d Cir. 2009) (quoting *Azubuko v. Royal*, 443 F.3d 302, 303 (3d Cir. 2006)). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted 'in the clear absence of all jurisdiction.'" *Id.* (citations omitted).

The allegations against all three judges relate to actions taken in their judicial capacity as a judge. Moreover there are no allegations to show that any of the judges acted in the absence of jurisdiction. They are immune from suit and, therefore, the claims against them will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915(A)(b)(2).

C.  **Prosecutorial Immunity**

The Complaint alleges that Savitz appeared before Judge Wharton to obtain a GPS and surveillance tracking device warrant and that Savitz conspired with Plaintiff's defense attorney for an "illegal plea" to drug dealing.

Prosecutors acting within the scope of their duties in initiating and pursuing a criminal prosecution are immune to suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 410 (1976). "[T]he immunity from civil liability enjoyed by prosecutors hinges on the sanctity of our judicial process, not "any special esteem." *Fogle v. Sokol*, 957 F.3d

8

148, 152 (3d Cir. Apr. 20, 2020) (quoting *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (internal quotation marks omitted). Only truly prosecutorial functions justify complete protection from suit. *Id.*

Savitz's acts in seeking a warrant and engaging in plea negotiations, taken as true, fit squarely within the realm of official prosecutorial duties. Therefore, Savitz enjoys immunity from § 1983 liability for those acts.

The Complaint also alleges in a conclusory manner, without supporting facts, that Savitz and Haley conspired to obtain an illegal plea. To state a conspiracy claim under § 1983, Plaintiff must show that "persons acting under color of state law conspired to deprive him of a federally protected right." *Gannaway v. Berks Cty. Prison*, 439 F. App'x 86, 93 (3d Cir. 2011). "[T]he linchpin for conspiracy is agreement." *Id.* (quoting *Bailey v. Board of Cty. Cmm'rs*, 956 F.2d 1112, 1122 (11th Cir. 1992)). There are no supporting facts to show that Savitz and Haley had an agreement, implicit or otherwise, to deprive Plaintiff of his federal rights.

In short, Savitz has absolute immunity for the acts taken by her as a prosecutor. And, the conspiracy claim against Savitz and Haley is frivolous. Therefore, the claims will be dismissed.

### D. Habeas Corpus

The Complaint alleges that Odom appeared before Judge Wharton to obtain a warrant and presented an application/affidavit that did not prove probable cause. It similarly alleges that Cornbrooks presented a false and fraudulent sworn affidavit to obtain an arrest warrant and search warrant.

In *Heck v. Humphrey*, the Supreme Court held that where success in a § 1983 action would implicitly call into question the validity of conviction or duration of sentence, a plaintiff must first achieve favorable termination of his available state or federal habeas remedies to challenge the underlying conviction or sentence. *See Heck*, 512 U.S. 477, 486-487 (1994). Plaintiff's claims rests upon allegations that the arrest and search warrants were wrongly obtained, all of which resulted in criminal charges and a guilty plea. The claims clearly implicate the validity of Plaintiff's conviction and are barred by *Heck*. *See Fields v. Venable*, 674 F. App'x 225, 229 (3d Cir. 2016) (finding *Heck* barred Fourth Amendment violation claim that plaintiff's rights were violated by an improperly issued arrest warrant and an illegal search upon his arrest because if evidence and statement were suppressed, the invalidity of plaintiff's possession-based parole revocation would necessarily be implied); *Ellington v. Cortes*, 532 F. App'x 53, 56 (3d Cir. 2013) (determining *Heck* barred claim because it was clear that a finding in plaintiff's favor on false arrest/unconstitutional search claim would imply the invalidity of his conviction on drug related charges, which were secured as a result of the allegedly unreasonable and unconstitutional search); *James v. York Cty. Police Dep't*, 160 F. App'x 126, 133-34 (3d Cir. 2005) (holding *Heck* barred § 1983 claim of unlawful search and seizure where "arrest and conviction were based on the evidence gathered" in the allegedly illegal search and seizure).

Plaintiff's claims implicate the validity of his conviction, and he has not alleged nor proven that his conviction or sentence was reversed or invalidated as required by *Heck*. Therefore, the claims against Odom and Cornbrooks rest on an "inarguable legal conclusion" and will be dismissed as frivolous. *Neitzke*, 490 U.S. at 326.

### E. Harassment/Retaliation

Plaintiff alleges that Collins, Mpok, Estrada, and Mears harassed and retaliated against him through separate and conspiratorial acts. The claim revolves around Defendants alleged unusual interest in Plaintiff's fiancé, nasty comments, looks, and entry into Plaintiff's cell to look at photographs of his fiancé. Plaintiff also alleges retaliation following his request that Internal Affairs investigate Defendants' harassment.

The officers did not violate Plaintiff's constitutional rights when they made nasty comments and gave Plaintiff's him looks or because they were interested in Plaintiff's fiancé. Verbal abuse or harassment, even of a lewd variety, is not actionable under 42 U.S.C. § 1983. *See Matthews v. Norristown State Hosp.*, 528 F. App'x 115, 119 (3d Cir. 2013); *Washington v. Rozich*, 734 F. App'x 798, 801 (3d Cir. 2018) (verbal harassment of a prisoner although distasteful does not violate the Eighth Amendment); *McBride v. Deer*, 240 F.3d 1287, 1291 n.3 (10th Cir. 2001) ("[A]cts or omissions resulting in an inmate being subjected to nothing more than threats and verbal taunts do not violate the Eighth Amendment"); *Higgs v. Suey*, 2008 WL 699594, at *5 (D.N.J. Mar. 12, 2008) ("Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.").

To the extent Plaintiff alleges a Fourth Amendment violation based upon an alleged one-time incident when his cell was entered and Defendants looked at photographs of his fiancé, the claim fails because "prisoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that

the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration.").

Plaintiff also alleges retaliation. In order to establish a retaliation claim Plaintiff must allege that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected activity was a substantial or motivating factor in the decision to discipline him. See *Watson v. Rozum*, 834 F.3d 417, 420 (3d Cir. 2016).

The Court assumes, without deciding, that Plaintiff engaged in constitutionally protected conduct when he requested an Internal Affairs investigation into the alleged harassment by Defendants. There are no allegations, however, that adverse action followed that protected act. To the contrary, the alleged retaliation (presumably harassment) occurred before the protected act. Moreover, there are no allegations that Plaintiff was punished for seeking an investigation by Internal Affairs.

Finally, Plaintiff's bare conclusory allegations do not suffice to sustain a conspiracy claim against Defendants. Se e.g., *Tindell v. Beard*, 351 F. App'x 591, 594 (3d Cir. 2009).

In sum, the foregoing claims are legally frivolous and will be dismissed

F. **Equal Protection**

Plaintiff alleges that Collins, Estrada, Mpok, Mears, Squares, and Burnman's comments about Plaintiff's hair style and threats to issue him a write-up if he did not recut his hair violated his right to equal protection. Plaintiff claims Defendants carried out unequal treatment "by singling him out as a 'class of one' from the other inmate[s] over his haircut which was less different than others." (D.I. 3 at 6)

12

A plaintiff may bring an equal protection claim under two legal theories. He may either: (1) allege that a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin, *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305, n.112 (3d Cir. 2016); or (2) allege that a defendant treated him as a "class of one"—i.e., differently from others similarly situated—for arbitrary or irrational reasons, *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips v. County of Allegheny*, 515 F.3d at 243.

Plaintiff's 'class of one' theory arises from his claim that his haircut "was less different" from other inmates, and he was threatened with a write-up if he did not recut his hair. As pled, the conclusory allegations do not provide a basis to show how Defendants violated Plaintiff's right to equal protection. Plaintiff alludes to the prison policy regarding haircuts and, while Plaintiff was told to have his hair recut, there are no allegations that Plaintiff was forced to recut his hair. Nor does Plaintiff allege that he received a write-up or was punished in any manner because of his haircut. Also, Plaintiff alleges in a conclusory manner that he was arbitrarily subjected to treatment from others similarly situated, but his allegations suggest that his hairstyle was not the same as those of other inmates, as he decribes his haircut as "less different." The allegations, therefore, do not support a claim that Plaintiff was intentionally treated differently from others similarly situated with no rational basis for difference in treatment. *See Village of Willowbrook v. Olech*, 528 U.S. at 564.

Accordingly, the equal protection claims will be dismissed as legally frivolous.

### G.     Respondeat Superior

Plaintiff alleges that Square and Burnman failed to supervise their subordinates, openly condoned their behavior, and did nothing to stop their behavior. (D.I. 3 at 6) Plaintiff's claims rest upon a theory of respondeat superior.

There is, however, no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved"; personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk Cty.*, 454 U.S. at 325 (holding that liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

The claims against Squares and Burnman therefore fail. As discussed, all claims raised are frivolous and none state a claim that Plaintiff's constitutional rights were violated. Even if Squares and Burnman acquiesced in the behavior complained of by Plaintiff, the issue is moot because Plaintiff's constitutional rights were not violated. Accordingly, the claim against Squares and Burnman will be dismissed.

### V.     CONCLUSION

For the above reasons, the Court will dismiss the Complaint as frivolous and based upon immunity from suit pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (iii) and 1915A(b)(1) and (2). The Court finds amendment futile.

An appropriate order will be entered.